IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| MICOR INDUSTRIES, INC., | ) | |
| Plaintiff, | ) ) | |
| vs. | ) | 5:17-cv-01408-UJH-LSC |
| MAZAK CORPORATION, | ) ) | |
| Defendant. | ) ) ) | |

## Memorandum of Opinion

Plaintiff Micor Industries, Inc. brings this action against Defendant Mazak Corporation over disputes concerning the sale and subsequent installation of certain industrial equipment by Defendant for Plaintiff. Before the Court is Defendant's Motion to Dismiss for *Forum Non Conveniens* or to Transfer (docs. 5 & 6), Plaintiff's Motion to Remand (doc. 8), and Plaintiff's Motion to Strike (doc. 15). The Motions have been fully briefed and are ripe for decision. For the following reasons, Defendant's Motion to Dismiss for *Forum Non Conveniens* or to Transfer is due to be granted; Plaintiff's Motion to Remand is due to be denied; and Plaintiff's Motion to Strike is due to be denied.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is an Alabama corporation formed in 2004 that specializes in precision and high-tech machining. Its principal and sole place of business is in Morgan County, Alabama. Defendant is a New York corporation that has its principle place of business in Kentucky. In 2014, Plaintiff needed additional capacity to manufacture metal parts for its customers. Plaintiff negotiated with the Defendant for the purchase of two industrial lathing machines through Defendant's authorized distributor, Pinnacle Machine Tools, Inc. ("Pinnacle"). In December 2014 Plaintiff purchased an Integrex 1200SR for $357,500 and Intergrex I-630/6S for $717,500 (collectively, the "Equipment") from Defendant.

Following the purchase and installation of the Equipment, Plaintiff alleges that the Equipment failed to function correctly. According to Plaintiff, Defendant refused to accept blame for failure of the Equipment and has failed to properly repair, replace, or otherwise compensate Plaintiff for the Equipment. Plaintiff brought suit under a variety of state-law causes of action in the Circuit Court of Morgan County, Alabama on July 18, 2017.

Defendant timely removed the action to this Court and filed an answer to Plaintiff's Complaint on August 8, 2017. Less than two weeks later, Defendant filed its Motion to Dismiss for *Forum Non Conveniens* or to Transfer. The Court ordered that the parties brief the Motion. After the entry of the Court's Order, but before

Plaintiff's Response was due, Plaintiff filed its Motion to Remand. The Court ordered that the Motion to Remand also be briefed. The crux of both motions concerns forum-selection clauses contained in (1) documents sent by Defendant to Plaintiff, specifically the Sales Order Confirmations ("SOCs"), and (2) the Purchase Orders ("POs") sent from Plaintiff to Defendant. Both parties insist that the forum-selection clause in their document became part of the parties' contract. The Court thus reviews the allegations in the Plaintiff's Complaint as well as evidence presented in the parties' Motions concerning the formation of the contract for the sale of the equipment between the parties.

### a. PLAINTIFF'S COMPLAINT

Plaintiff's Complaint contains few facts surrounding the formation of the contract between the parties. Nor does it contain any detailed allegations concerning the negotiations for purchase of the Equipment. Instead, the Complaint simply states that the Plaintiff's POs are the source of the terms of the contract that govern the purchase of the Equipment: "Plaintiff and [Defendant] by agreement entered into [Plaintiff's] [POs] for the Equipment whereby they agreed this Court would be the exclusive venue and jurisdiction for any legal cause of action between the parties (as shown in attached Exhibit A)." (Doc. 1 ¶ 7.) The Complaint specifically quotes the choice-of-law-and-forum clause in the POs:

APPLICABLE LAW/REMEDIES: This Purchase Order shall be governed by the laws of the State of Alabama, without regard to such state's principles of conflicts of laws. Jurisdiction for any cause of action between the parties shall lie exclusively in the Circuit Court of Morgan County, Alabama. References to specific remedies of [Plaintiff] herein does not exclude other available remedies of [Plaintiff].

(*Id.*) This is the extent of the Plaintiff's allegations in the Complaint relating to the formation of the contract.

### b. DEFENDANT'S MOTION TO DISMISS FOR *FORUM NON CONVENIENS* OR TO TRANSFER

According to the Defendants the terms in the POs do not govern the parties' contract. Instead, the SOCs are the source of the contract terms. On December 16, 2014, Plaintiff executed and delivered to Pinnacle SOCs for the purchase of the Equipment after negotiations between the parties. (Doc. 14 ¶ 4.; Doc. 6 Exs. A-D.) The SOCs were composed of both typed and handwritten information. The SOCs included a pre-typed recipient to whom Plaintiffs should send the SOCs, Jerry Edwards, the representative of Pinnacle; the date "12/16/2014"; the name and address of Plaintiff; and  a description of the Equipment, with components itemized and the cost of each component listed. (Doc. 6 Exs. A-D.) Directly to the right of Plaintiff's signature line, and below the space for insertion of the total price of the Equipment, the SOCs included the following text:

THIS ORDER EXPRESSLY LIMITS BUYER'S ACCEPTANCE TO THE TERMS OF THIS ORDER, INCLUDING THE TERMS AND CONDITIONS PRINTED ON THE REVERSE SIDE HEREOF. ANY ADDITIONAL OR DIFFERENT TERMS, WHETHER CONTAINED IN BUYER'S FORMS OR OTHERWISE PRESENTED BY BUYER, ARE REJECTED UNLESS EXPRESSLY AGREED TO IN WRITING BY [Defendant] CORPORATION.

The SOCs included on their reverse side a full page of boilerplate terms and conditions of sale. The SOCs indicated the existence of the terms and conditions of sale directly above the Plaintiff's signature line, stating: "THE WARRANTY & TERMS & CONDITIONS OF SALE COVERING THIS ORDER IS SET FORTH ON THE REVERSE SIDE HEREOF."

In addition to the pre-printed items stated above, the SOCs attached to the Defendant's Motion included hand-written entries by Plaintiff's president. One copy of the SOCs was executed by Plaintiff's president, (doc. 6 Exs. B & D) and a second was executed by Plaintiff's Estimating Manager. (*Id.* at Exs. A & C.) None of the SOCs included handwritten dates next to the signature; they did, however, include the pre-printed date December 16, 2014. Other handwritten entries included customer purchase order numbers and a "Total Price" that differed from the preprinted sum of the itemized list of goods. (*Id.* at Exs. B & D.)

In addition to the SOCs that were executed and delivered to Pinnacle on December 16, 2014, Plaintiffs also sent to Defendant certain Purchase Orders

("POs"). According to Defendant, it was not clear whether the POs were sent before or after Plaintiff's execution of the SOCs. Each PO stated that the "Machine is purchased per Machine Sales Order Confirmation," followed by an order number corresponding to Defendant's SOCs. (Doc. 6 Exs. E & F.) The POs also included the following language:

> Your acceptance of this order constitutes acceptance of all terms and conditions on the face hereof and which are displayed at our website at www.micorind.com. These terms are incorporated fully herein and shall prevail over any and all inconsistent terms or conditions contained in your quotation and/or acknowledgement. Different of additional terms or conditions in your quotation and/or acknowledgment are hereby rejected and your acceptance of this order is expressly limited to the specific terms and conditions contained herein.

(*Id.*) While these POs are signed by representatives of Plaintiff, they are not signed by Defendant. In fact, Defendant did not sign any of the documents including Plaintiff's terms and conditions.

In addition to the SOCs, in the time after Plaintiff's signing of the SOC, Plaintiff also signed a number of other documents that included Defendant's terms and conditions of sale that mirror the limitations of the terms of a buyer's acceptance as listed above. This includes installation forms, (*id.* Exs. Q & R), and security agreements for the Equipment (*id.* Exs. O & P). These documents include

an identical copy of Defendant's terms and conditions of sale that were included with their SOCs.

### c. PLAINTIFF'S MOTION TO REMAND

In its Motion to Remand, Plaintiff does not dispute Defendant's recitation of the contents of the SOCs and POs or that on December 16, 2014, Defendant provided Plaintiff with the SOCs. Thus the parties agree that the first documents exchanged between the parties were the SOCs. Plaintiff, however, states that it did not sign the SOCs or send them to Pinnacle on December 16, 2014. Plaintiff admits that it sent the POs to Defendant on either December 16, 2014 (doc. 18 at 3) or December 17, 2014 (doc. 18 at 5). But only after Plaintiff sent the POs to Defendant did Plaintiff sign the SOCs:

> Only after [Plaintiff] issued its PO's to [Defendant] were [Plaintiff]'s PO numbers for each piece of the equipment, and the total price to be paid for each piece of equipment "as shown on [Plaintiff]'s PO's", hand-written into the blank spaces on [Defendant]'s documents titled "Sales Order Confirmations".

(Doc. 18 at 7.) Plaintiff likewise corroborates Defendant by stating that following receipt of Plaintiff's POs, Defendant issued a number of other documents, including the Installation Forms and Security Agreements, which the Plaintiff's representatives signed.

### d. PLAINTIFF'S MOTION TO STRIKE

In its response to Defendant's Motion to Dismiss for *Forum Non Conveniens* or to Transfer, Plaintiff pointed out that Defendant failed to attach the affidavit of David Kennedy (the "Kennedy Affidavit") referred to throughout Defendant's Motion as a basis to authenticate the over 55 exhibits attached to its Motion to Dismiss for *Forum Non Conveniens* or to Transfer. (Doc. 13 at 4.) Plaintiff devoted multiple pages in its Response arguing that Defendant's "Undisputed Facts" section of its brief as well as Defendant's exhibits should be struck for lack of authentication. (*Id.* at 12.) Upon reception of Plaintiff's Response, Defendant filed the missing Kennedy Affidavit, stating that it was "inadvertently omitted . . . due to the voluminous attachments to Defendant's Motion." (Doc. 14 at 1.) The Kennedy Affidavit had been signed and notarized four days before Defendant filed its Motion to Dismiss for *Forum Non Conviens* or Transfer. Plaintiff responded to the filing of Defendant's omitted exhibit with a formal Motion to Strike, (doc. 15), arguing that Plaintiff had only been privy to the exhibit after filing its response and that it "is highly prejudiced by a late and after-the-fact filing of said affidavit by [Defendant], when it is the crux of [Defendant's] motion." (Doc. 15 at 2.)

Plaintiff's Motion to Strike is an attempt to prevail on a technicality rather than address the substance of Defendant's motions. Given the voluminous attachments to Defendant's motion, it is understandable that Defendant failed to

attach the affidavit—there is no tactical advantage that Defendant would gain from doing so considering the contents of that affidavit are quoted verbatim throughout Defendant's Motion.

Plaintiff does not detail any attempts to procure the Kennedy Affidavit prior to filing the Motion to Strike, and it appears that Plaintiff instead opted to file its Response under the assumption that it *could not* simply contact Defendant to notify it of its omission and receive the missing exhibit. Plaintiff's argument that Defendant's exhibits and undisputed facts should be struck is especially puzzling considering that Plaintiff relies on the same documents in its own Motion that it argues should be struck from Defendant's motion. Because Plaintiff has not shown how it is prejudiced by Defendant's late filing, its Motion to Strike is DENIED.

## II. STANDARD OF REVIEW FOR THE PARTIES' MOTIONS

### a. Standard of Review for Defendant's Motion to Dismiss for *Forum Non Conveniens* or to Transfer

"When a court 'treats [a] motion as having been brought under Rule 12(b), then it is subject to the rules and practices applicable to the most analogous Rule 12(b) motion.'" *Bryant v. Rich*, 530 F.3d 1368, 1376 (11th Cir. 2008) (quoting 5C Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1360 at 91 (3d ed. 2004)). Defendant seeks dismissal of Plaintiff's Complaint under the doctrine of *forum non conviens* or the transfer of the action under 28

U.S.C. § 1404. While Defendant has made references to a 12(c) standard in its motion, the proper standard for Defendant's challenge of venue is brought under 12(b)(3). *Id.*

When reviewing a challenge to venue, the Court accepts the allegations of the Complaint as true, to the extent they are uncontroverted by properly submitted evidence. *Estate of Myhra v. Royal Caribbean Cruises, Ltd.*, 695 F.3d 1233, 1239 (11th Cir. 2012). The Court may make factual findings necessary to resolve motions for improper venue, as long as the resolution of the factual disputes raised under Rule 12(b)(3) do not amount to an adjudication on the merits of the case. *Bryant*, 530 F.3d at 1376 (citing *Murphy v. Schneider National, Inc.*, 362 F.3d 1133, 1139-40 (11th Cir. 2004)).

If adjudication of the Rule 12(b)(3) motion does not reach the merits of the case, the Court should take "the facts of the complaint as true," but only "to the extent they are uncontroverted by defendant['s] affidavits." *Estate of Myhra*, 695 F.3d at 1239 (quoting *Home Ins. Co. v. Thomas Indus., Inc.*, 896 F.2d 1352, 1355 (11th Cir.1990) (internal quotation marks omitted)). When the parties submit conflicting affidavits, the court, in the absence of an evidentiary hearing, "is inclined to give greater weight to the plaintiff's version of the jurisdictional facts and to construe such facts in the light most favorable to the plaintiff." *Id.* (quoting *Thomas Indus.,*

*Inc.*, 896 F.2d at 1355). "In sum, Rule 12(b)(3) is a somewhat unique context of dismissal in which [the Court] consciously look[s] beyond the mere allegations of a complaint, and, although [the Court] continue[s] to favor the plaintiff's facts in the context of any actual evidentiary dispute, [it] do[es] not view the allegations of the complaint as the exclusive basis for decision." *Id.* (citations omitted).

### b. PLAINTIFF'S MOTION TO REMAND

A defendant may remove a case to federal court pursuant to 28 U.S.C. § 1446. Removal jurisdiction exists when the district court would have had original jurisdiction over the action. 28 U.S.C. § 1441(a); *Darden v. Ford Consumer Fin. Co., Inc.*, 200 F.3d 753, 755 (11th Cir. 2000). Once the case is removed, the plaintiff may move to remand the case to state court for lack of subject matter jurisdiction at any time. 28 U.S.C. § 1447(c). The plaintiff may also move to remand by challenging "the propriety of the removal itself, whether that challenge be on the basis of a procedural defect or a lack of subject matter jurisdiction" within thirty days of removal. *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1213 n.64 (11th Cir. 2007) (emphasis in original); 28 U.S.C. § 1447(c). In either case, the party seeking to invoke federal jurisdiction bears the burden of proving proper federal jurisdiction. *Leonard v. Enter. Rent a Car*, 279 F.3d 967, 972 (11th Cir. 2002). Conclusory allegations, without establishing the underlying facts supporting such assertions,

are insufficient. *Williams v. Best Buy Co., Inc.*, 269 F.3d 1316, 1319-20 (11th Cir. 2001). Factual allegations supported with evidence may be "combined with reasonable deductions, reasonable inferences, or other reasonable extrapolations" to establish federal jurisdiction. *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 774, 754 (11th Cir. 2010). Defendants may "introduce their own affidavits, declarations, or other documents" in support if that party sought to remove pursuant to the first paragraph of 28 U.S.C. § 1446(b). *Id.* at 755. All uncertainties concerning removal jurisdiction are to be resolved in favor of remand. *Russell Corp. v. Am. Home Assurance Co.*, 264 F.3d 1040, 1050 (11th Cir. 2001) (citing *Burns v. Windsor Ins. Cor.*, 31 F.3d 1092, 1095 (11th Cir. 1994)).

## III. JURISDICTION

The Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a). Plaintiff is an Alabama corporation headquartered in Alabama. Defendant is a New York Corporation with its principal place of business in Kentucky. The parties are thus diverse. Plaintiff seeks compensatory damages for the defective Equipment it purchased from Defendant. Because Plaintiff claims that the Equipment still does not function, and the Equipment was purchased for $1,075,000.00, the amount in controversy exceeds $75,000. Neither party has contested personal jurisdiction.

Plaintiff brings state-law claims of negligence, wantoness, breach of contract, breach of express warranties, breach of implied warranty of merchantability and fitness for a particular purpose, as well as the Alabama Extended Manufacturers' Liability Doctrine. (Doc. 1 Ex. 1 at 20-59.) These claims are based upon Plaintiff's purchase and Defendant's installation of the Equipment at Plaintiff's facility located in Morgan County, Alabama, which is located in the Northern District of Alabama. Therefore, venue is proper for the purposes of consideration of the parties' current motions. 28 U.S.C. § 1391(b)(2) ("A civil action may be brought in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."); *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 134 S. Ct. 568, 578 (2013) ("[V]enue is proper so long as the requirements of § 1391(b) are met, irrespective of any forum-selection clause.").

## IV.  Discussion

### a.  Contract Formation[1]

---

[1] Defendant argues that the Court should apply Kentucky law under the choice-of-law clause in its SOCs. This choice-of-law clause only applies if the terms of Defendant's SOCs are part of the parties' contract. Applying "the [SOCs'] choice-of-law clause to resolve the contract formation issue would presume the applicability of a provision before its adoption by the parties has been established." *AEP Indus., Inc. v. Thiele Techs., Inc.*, No. 2:15-CV-315-WKW, 2016 WL 1230010, at *3 n.2 (M.D. Ala. Mar. 29, 2016) (quoting *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 119 (2d Cir. 2012)). Because the Court cannot apply the choice-of-law clause until it determines that the parties have a valid contract, it applies Alabama law to determine whether a contract exists

The Court must determine the terms of the contract between the parties. Article 2 of the UCC, as codified in Ala. Code § 7-2-101 *et seq.* and Ky. Rev. Stat. Ann. § 355.2-101 *et. seq.*, applies to "transactions in goods." Ala. Code § 7-2-102; Ky. Rev. Stat. Ann. § 355.2-102. Because the Equipment undoubtedly falls within the definition of a "good," Ala. Code § 7-2-105(1); Ky. Rev. Stat. Ann. § 355.2-105, the Court determines whether the contract was formed according to Article 2.

The Court looks first to whether Defendant's SOCs constitute an offer, which Plaintiff accepted either (1) by signing the SOCs and sending them to Pinnacle or (2) by sending its POs back to Defendant. While there is no binding authority under Alabama law on whether a sales order contract or price quotation can constitute an offer, courts have recognized that:

---

between the parties. *St. Paul Fire & Marine Ins. Co. v. ERA Oxford Realty Co. Greystone, LLC*, 572 F.3d 893, 895 n.1 (11th Cir. 2009) ("A federal court sitting in diversity, as in this case, must apply the choice of law principles of the state in which it sits. In determining which state's law applies in a contract dispute, Alabama follows the principle of *lex loci contractus*, applying the law of the state where the contract was formed."(quoting *Cherokee Ins. Co., Inc. v. Sanches*, 975 So.2d 287, 292 (Ala.2007))). The *lex loci contractus* principle is likewise no more insightful, as the parties dispute the time and place where the contract was formed. Ultimately, the Court need not resolve the choice-of-law question because both Kentucky and Alabama have adopted the Uniform Commercial Code ("UCC"), which governs the sale of goods, including the Equipment. *See Scott v. Prudential Sec., Inc.*, 141 F.3d 1007, 1012 (11th Cir. 1998) ("We, however, need not resolve this choice of law problem because the relevant law in both states is essentially in harmony."). The Court, therefore, will apply the Uniform Commercial Code and will include citations to the relevant provisions of both the Alabama and Kentucky codes.

> a price quotation can amount to an offer which can be accepted. But to do so, the offer[or] must intend that the contract exist upon acceptance of the offer; that is, it must reasonably appear from the price quotation that assent to that quotation is all that is needed to ripen the offer into a contract. Whether this price quotation is an offer is a question of fact that depends upon the parties' acts, their expressed intent, and the circumstances surrounding each transaction.

*AEP Indus., Inc. v. Thiele Techs., Inc.*, No. 2:15-CV-315-WKW, 2016 WL 1230010, at *4 (M.D. Ala. Mar. 29, 2016) (quoting *Bergquist Co. v. Sunroc Corp.*, 777 F. Supp. 1236, 1248-49 (E.D. Pa. 1991) (collecting cases from numerous jurisdictions)); *see also Jim Walter Res., Inc. v. Downard Longwall, Inc.*, No. 7:05-CV-01338-LSC, 2008 WL 11380012, at *6 (N.D. Ala. Jan. 16, 2008) ("In determining whether a price quote constitutes an offer, attention is given to whether 'the purported offer uses words of offer, clearly expresses a quantity, or otherwise signifies to the recipient that a bargain may be sealed.'" (quoting 1 WILLISTON ON CONTRACTS § 4:7 (4th ed. 2007))). The SOCs included the conspicuous statements showing the SOCs were an offer. (*See, e.g.*, Doc. 6 Ex. 1 ("Customer acknowledges that Distributor will order the goods from [Defendant] by submission of a copy of this [SOC] to [Defendant]"); *id.* ("THIS ORDER EXPRESSLY LIMITS BUYER'S ACCEPTANCE TO THE TERMS OF THIS ORDER").) The SOCs likewise contain quantity amounts, total price, shipping address and delivery date. (*Id.*) Nor do the parties dispute that the SOCs constituted an offer. (*See* Doc. 18 at 3 ("[The

SOCs] contained a detailed description of the . . . equipment and accessories [Plaintiff] was interested in purchasing, and outlined [Defendant's] offers to sell [Defendant's] equipment and the accessories to [Plaintiff] on December 16, 2014.".) The Court thus easily concludes the SOCs were offers to contract.

Although it is clear to the Court that Defendant's SOCs constituted an offer, determining whether Plaintiff's POs constitute acceptance of Defendant's offer is a trickier task. Accepting the offer embodied in Defendant's SOCs can occur under Ala. Code § 2-206 "in any manner and by any medium reasonable in the circumstances." *See also* Ky. Rev. Stat. Ann. § 355.2-206 (same). One "reasonable" way for Plaintiff to accept Defendant's offer contained in the SOCs occurred under Defendant's disputed version of the facts: Plaintiff's representative signed the SOCs and sent them to Pinnacle. Plaintiff readily admits its representatives signed the SOCs, but the parties dispute when the signing occurred. Because the Court gives greater weight to the Plaintiff's facts and construes them in the light most favorable to Plaintiff, it assumes, as Plaintiff has alleged, that the SOCs were not signed until after Plaintiff sent the POs to Defendant.

A second way for Plaintiff to accept Defendant's offer embodied in the SOCs was by sending its POs back to Defendant. Where the parties exchanged their own

standardized forms during contract negotiations, the Court turns to the so-called "battle of the forms" provision of Article 2, Ala. Code § 7-2-207, to determine whether a contract was formed when Plaintiff sent its POs to Defendant, and before its representatives signed the SOCs. *See also* Ky. Rev. Stat. Ann. § 355.2-207 (same). The battle of the forms provision is intended to deal with a situation "where an agreement has been reached either orally or by informal correspondence between the parties and is followed by one or both of the parties sending formal memoranda embodying the terms so far as agreed upon and adding terms not discussed." Ala. Code § 7-2-207 cmt. 1. Ala. Code § 7-2-207 "alters the 'mirror' rule of common law, [which] require[es] the terms of the offer and acceptance to be identical, or to mirror each other." *Burbic Contracting Co. v. Cement Asbestos Prod. Co.*, 409 So. 2d 1, 4 (Ala. 1982). Section 7-2-207(1) thus states that:

> [a] definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance *even though it states terms additional to or different from those offered or agreed upon*, unless acceptance is expressly made conditional on assent to the additional or different terms.

Ala. Code § 7-2-207 (emphasis added); *see also* Ky. Rev. Stat. Ann. § 355.2-207 (same). This section thus recognizes that in a commercial setting a contract can be formed even though the terms of an offer and acceptance do not mirror each other.

The parties do not dispute that after receiving Defendant's SOCs Plaintiff sent its POs back to Defendant. It would appear that under Ala. Code § 7-2-207 there was an offer, Defendant's SOCs, and an acceptance, Plaintiff's POs. Plaintiff attempts to sidestep the issue, by unilaterally declaring "[Plaintiff] did not accept the offers by executing [Defendant's] [SOC] forms." (Doc. 18 at 3.) This argument ignores the context in which the Plaintiff sent the POs to Defendant—directly after receiving the SOCs. The POs themselves included the statement that "[the Equipment] is purchased per Machine [SOC]." (Doc. 8 Ex. 1 at 1.) Thus the POs directly refer to the SOCs and confirm that Plaintiff intends to purchase the Equipment. Even though the terms contained in the SOCs and POs differ, under Ala. Code § 7-2-207 a "written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon." *See also* Ky. Rev. Stat. Ann. § 355.2-207 (same).

That Plaintiff's POs constitute a valid acceptance does not end the inquiry, as the second clause of the battle-of-the forms section limits acceptance in a confirmatory writing where "acceptance [of the offer] is expressly made conditional on assent to the additional or different terms." Ala. Code § 7-2-207(1); Ky. Rev. Stat. Ann. § 355.2-207(1) (same). If Plaintiff expressly conditioned its

acceptance of the Defendant's SOCs on the Defendant's assent to the different terms in the POs, then there would be no contract.  While no Alabama Court has delved into the construction of the second part of §7-2-207, other courts in this Circuit have interpreted the limiting clause or identical state-law provisions strictly. *See  Jim Walter Res., Inc. v. Downard Longwall, Inc.*, No. 7:05-CV-01338-LSC, 2008 WL 11380012, at *8 (N.D. Ala. Jan. 16, 2008) ("[t]hat the acceptance is predicated on the offeror's assent must be 'directly and distinctly stated or expressed rather than implied or left to inference' " (quoting *Dorton v. Collins & Aikman Corp.*, 453 F.2d 1161, 1168 (6th Cir. 1972)));  *Option Wireless, Ltd. v. OpenPeak, Inc.*, No. 12-80165-CIV, 2012 WL 6045936, at *6 (S.D. Fla. Dec. 5, 2012) (a "seller's invoice is not deemed 'expressly conditional' under § 2–207 merely because its terms do not match the terms of the buyer's offer. Rather, to be deemed 'expressly conditional,' the seller's invoice must place the buyer on unambiguous notice that the invoice is a mere counteroffer." (quoting *JOM, Inc. v. Adell Plastics, Inc.*, 193 F.3d 47, 53 (1st Cir. 1999))). Kentucky courts likewise have construed the "express conditioning" requirement strictly in the past. *See Consol. Aluminum Corp. v. Krieger*, 710 S.W.2d 869, 872 (Ky. Ct. App. 1986).

Examples of provisions which courts have held expressly conditioned acceptance on the offeror's assent to the additional or different terms, include:

"Seller's acceptance of Buyer's order and shipments made pursuant thereto are subject to and *expressly conditioned upon Buyer's acceptance of the terms and conditions herein. . . . ,*" *Coastal & Native Plant Specialties, Inc. v. Engineered Textile Prod., Inc.,* 139 F. Supp. 2d 1326, 1334 (N.D. Fla. 2001) (emphasis added), and "Seller's acceptance of any offer by Purchaser to purchase the Products is *expressly conditional upon the Purchaser's assent to all the terms and conditions herein*, including any terms additional to or different from those contained in the offer to purchase," *PCS Nitrogen Fertilizer, L.P. v. Christy Refractories, L.L.C.,* 225 F.3d 974, 979 (8th Cir. 2000) (emphasis added). An example of a provision which does not prevent contract formation under the battle-of-the-forms provision includes: "Execution of this agreement constitutes an acceptance *expressly limited to the terms herein and any additional or different terms suggested by Seller are hereby rejected unless expressly agreed to in writing by Buyer.*" *Westinghouse Elec. Corp. v. Nielsons, Inc.,* 647 F. Supp. 896, 898 (D. Colo. 1986) (emphasis added).

Plaintiff's POs do not contain any provision that expressly conditions acceptance on Defendant's assent to additional or different terms. The closest the POs come are in two clauses that state: "Different or additional terms or conditions in your quotation and/or acknowledgement are hereby rejected and your acceptance of this order is expressly limited to the specific terms and conditions

contained herein." (Doc. 8 Ex. 1 at 1.) The POs likewise refer to the terms and conditions displayed at www.micorind.com, which include the following "DIFFERENT OR ADDITIONAL TERMS OR SELLER'S RESPONSES ARE HEREBY REJECTED AND NO PRIOR OR SUBSEQUENT CONDUCT OF [Plaintiff] SHALL BE DEEMED TO BE AN ACCEPTANCE OF DIFFERENT OR ADDITIONAL TERMS."[2] (Doc. 8 Ex. 1 at 3.) Neither of these terms contain a clear, express conditioning of *acceptance* on Defendant's assent to Plaintiff's different terms. Instead, they purport to only accept terms that are consistent with the terms or conditions in Plaintiff's POs. Expressly conditioning acceptance amounts to the offeree saying there is no deal if the offeror does not assent to the additional terms. *Dorton*, 453 F.2d at 1168 ("we believe that [Section 2-207] was intended to apply only to an acceptance which clearly reveals that the offeree is unwilling to proceed with the transaction unless he is assured of the offeror's assent to the additional or different terms therein"). What Defendant has done here is to recognize the existence of a contract, but dictate what terms are or are not part of that contract. Thus, the Court holds that Defendant's SOCs constituted an offer,

---

[2] *Jim Walter Res., Inc. v. Downard Longwall, Inc.*, No. 7:05-CV-01338-LSC, 2008 WL 11380012, at *6 (N.D. Ala. Jan. 16, 2008) ("A written contract "may incorporate the terms of another document by reference." (quoting *Cavalier Mfg., Inc. v. Clarke*, 862 So. 2d 634, 640 (Ala. 2003))).

which the Plaintiff accepted by sending the POs back to Defendant under Ala. Code § 7-2-207 and Ky. Rev. Stat. Ann. § 355.2-207.

### b. CONTRACT MODIFICATION

That a contract exists between the parties does not end the Court's inquiry, as it must determine which, if either, of the parties' competing forum-selection clauses govern. If there were no other documents exchanged between the parties outside of the SOCs and POs, the Court would interpret those documents' conflicting clauses under Ala. Code § 7-2-207(2). *See* Ala. Code § 7-2-207 cmt. 6 ("Where clauses on confirming forms sent by both parties conflict each party must be assumed to object to a clause of the other conflicting with one on the confirmation sent by himself. As a result the requirement that there be notice of objection which is found in subsection (2) is satisfied and the conflicting terms do not become a part of the contract."). Under Plaintiff's version of the facts its representatives signed the Defendant's SOCs, Security Agreement, and Installation Forms following Plaintiff's mailing of its POs to Defendant—which the Court determined to be an acceptance of Defendant's offer. The SOCs, Security Agreement, and Installation Forms contained Defendant's terms and conditions of sale. The Court must therefore determine whether Plaintiff's signing of those documents, *after* forming a contract by sending Defendant its POs, constitutes a

modification of the terms of the original contract between the parties and an adoption of the Defendant's terms and conditions of sale.

Modification of a contract is governed by Ala. Code § 7-2-209. *See also* Ky. Rev. Stat. Ann. § 355.2-209 (same). Two subsections of § 7-2-209 are pertinent to the parties' contract dispute. First, subsection (1) states an agreement modifying an existing contract does not need additional consideration to be binding. Ala. Code § 7-2-209(1); Ky. Rev. Stat. Ann. § 355.2-209(1) (same). Second, under subsection (2) the method whereby a party can effect modifications is limited:

> A signed agreement which excludes modification or rescission except by a signed writing cannot be otherwise modified or rescinded, but except as between merchants such a requirement on a form supplied by the merchant must be separately signed by the other party.

Ala. Code § 7-2-209(2); Ky. Rev. Stat. Ann. § 355.2-209(2) (same). Subsection (2), however, only contemplates modifications in instances where the parties have formed a contract by signed agreement. Here, the parties have formed a contract under the battle-of-the-forms provision of Article 2 under both Alabama and Kentucky law, and subsection (2) does not affect the ability of the parties to modify their contract.

The Court thus examines the conflicting clauses in the parties' forms concerning modification. The clause in Defendant's terms and conditions of sale concerning modifications states:

No statements subsequent to the acceptance of the Agreement and these terms and conditions shall be binding upon [Defendant], nor shall the Agreement or such terms or conditions be amended or modified, unless consented to in writing by a duly authorized officer of [Defendant] in a document referencing these terms and conditions.

(Doc. 6 Exs. A, B, C, D). Plaintiff's terms and conditions likewise state:

No modification of any part hereof shall be binding unless in writing and signed below.

(Doc. 8 Ex. 1 at 3.) The dueling modification clauses contained in the SOCs and POs both attempt to prohibit modification without a signed writing assenting to the modification.

The only signed documents between the parties were those signed by Plaintiff. After Plaintiff sent its POs to Defendant, and in doing so forming a contract, Plaintiff signed the SOCs, Security Agreements, and Installation Forms. By signing the documents, Plaintiff assented to their terms and conditions of sale, which included a clause modifying existing agreements between the parties:

ANY ADDITIONAL, INCONSISTENT OR DIFFERENT TERMS AND CONDITIONS CONTAINED IN BUYER'S PURCHASE ORDER OR OTHER DOCUMENTS SUBMITTED BY BUYER TO MAZAK AT ANY TIME, WHETHER BEFORE OR AFTER THE DATE HEREOF, ARE HEREBY EXPRESSLY REJECTED BY [Defendant]. [Plaintiff] ACKNOWLEDGES THAT, NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED IN ITS PURCHASE ORDER OR OTHER DOCUMENTS, RECEIPT AND ACCEPTANCE BY [Plaintiff] OF [Defendant's] PRODUCTS SHALL CONSTITUTE

ACCEPTANCE BY [Plaintiff] OF THESE TERMS AND CONDITIONS.

(Doc. 6 Exs. A, B, C, D, O, P, Q, & R.) According to the clause assented to by the Plaintiff, "receipt and acceptance" of the Equipment by Plaintiff constitutes acceptance of Defendant's terms and conditions of sale, including Defendant's forum-selection clause. Thus, the Court holds that the terms and conditions attached to Defendant's SOCs, Security Agreement, and Installation Forms, signed by Plaintiff, govern the parties' choice-of-forum dispute.

### c. TRANSFER UNDER § 1404(A)

Defendant argues the Court should transfer this action according to the forum-selection clause stating all disputes in the agreement must be brought in the Eastern District of Kentucky. A "forum-selection clause does not render venue in a court 'wrong' or 'improper' under statutes governing venue in federal courts." *Atl. Marine*, 134 S. Ct. at 579. Nonetheless the clause may be enforced through a motion to transfer for *forum non conveniens* under § 1404(a). *Id.* at 579-80 ("Section 1404(a) is merely a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system; in such cases, Congress has replaced the traditional remedy of outright dismissal with transfer."). Section 1404(a) states:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

28 U.S.C. § 1404(a). "In the typical case not involving a forum-selection clause, a district court considering a § 1404(a) motion (or a *forum non conveniens* motion) must evaluate both the convenience of the parties and various public-interest considerations." *Atl. Marine*, 134 S. Ct. at 581. Factors relating to the parties' private interests include:

> relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Id.* at 581 n.6 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241, n. 6 (1981) (internal quotation marks omitted)). Public-interest factors may include:

> the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law.

(*Id.* (quoting *Piper*, 454 U.S. at 241 n.6 (internal quotation marks omitted)). The Court must also give some weight to the plaintiffs' choice of forum. *Id.*

"The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which 'represents the parties' agreement as to the most

proper forum.' *Id.* (quoting *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988). A valid forum-selection clause protects the parties' legitimate expectations and furthers vital interests of the judicial system. *Id.* "For that reason, and because the overarching consideration under § 1404(a) is whether a transfer would promote 'the interest of justice,' 'a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases.'" *Id.* (quoting *Steward Org.*, 487 U.S. at 31); *see also Stiles v. Bankers Healthcare Grp., Inc.*, 637 F. App'x 556, 562 (11th Cir. 2016) ("'Only under extraordinary circumstances unrelated to the convenience of the parties' should a court decline to enforce a forum-selection clause." (quoting *Atl. Marine*, 134 S. Ct. at 581)). If the Court finds that the parties have agreed to a valid forum selection clause, the Court must adjust its usual § 1404(a) analysis in three ways:

> First, the plaintiff's choice of forum merits no weight. Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted. . . .

> Second, a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests. When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation. A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum. . . .

> Third, when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations. . . .

*Id.* at 581-82 (citations omitted). "Consideration of whether to enforce a forum selection clause in a diversity jurisdiction case is governed by federal law, under 28 U.S.C. § 1404(a) (1982), not state law." *P & S Bus. Machines, Inc. v. Canon USA, Inc.*, 331 F.3d 804, 807 (11th Cir. 2003) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 28–29 (1988)). The burden lies on Plaintiff as the party opposing enforcement of the forum-selection clause. *Id.*

Because there is a valid forum-selection clause, the Court will only examine the public factors as stated in *Atlantic Marine* to determine whether to transfer this case to the appropriate venue in Kentucky. 134 S. Ct. at 581-82. Those factors include administrative difficulties flowing from court congestion and local interest in having localized controversies decided at home. *Id.* at 581. Here, there are no public factors that properly present a barrier to transfer. No significant court congestion will occur from the transfer of a single case to the Eastern District of Kentucky. Each party was located in their respective states during contract negotiations and subsequent acts, thus there are mitigating local interests in having the dispute settled in Kentucky or Alabama. Because the "interest of justice" is

ultimately served by holding the parties to their bargain, *id.* at 583, and no extraordinary circumstances prevent enforcement of the forum-selection clause, the Court shall transfer this action to the Eastern District Kentucky.

## V. Conclusion

For the reasons discussed above, Defendant's Motion to Dismiss for *Forum Non Conveniens* or to Transfer (Docs. 5 & 6) is due to be GRANTED and this case transferred to the Eastern District of Kentucky. Plaintiff's Motion to Remand and Motion to Strike are due to be DENIED. An Order consistent with this Opinion is to be entered simultaneously.

**DONE** AND **ORDERED** ON FEBRUARY 9, 2018.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

190485